UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY MILLER and LAURA MILLER,

                          Plaintiffs,

                                              CIVIL CASE NO. 03-40210

v.

SHORE FINANCIAL SERVICES, INC. d/b/a          HONORABLE PAUL V. GADOLA
SHORE MORTGAGE,                               U.S. DISTRICT COURT

                          Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant's motion for summary judgment. The motion has been fully

briefed by both parties, and oral arguments have been presented. For the reasons set out below, the

Court grants the motion.

**I. Background**

On July 19, 2002, Plaintiffs Jeffrey and Laura Miller applied for a loan with Defendant Shore

Mortgage equal to 90% of the value of Plaintiffs' house, an amount initially estimated to be

$234,000. (The original estimated value of the house was $260,000.) This loan carried an interest

rate of 6.5%. Plaintiffs sought the loan in order to refinance their existing mortgage and to pay off

certain debts. When they filled out the loan application, Plaintiffs signed a document entitled "Rate

Lock Option Agreement," which offers a borrower the option of locking the available interest rate

in return for a deposit. The document stated that "the interest rate and amount of discount points

will not be guaranteed and may change at closing." Plaintiffs did not choose this option of reserving

their interest rate. On the same day of the application, Plaintiffs also signed a document entitled

"Good Faith Estimate of Settlement Charges," which stated that the estimates given at the time of application were not commitments and that the interest rates could change up until the closing date.

On August 2, 2006, a short time after the application, Plaintiffs' house was appraised at a value of $277,000.  Defendant notified Plaintiffs that their house had been appraised at a higher value than expected and that, accordingly, Plaintiffs would be able to borrow a larger loan than expected in the amount of $249,300, or 90% of the actual value of the house.  This higher loan amount carried an interest rate of 7.5%.  Defendant claims that their notification to Plaintiff constituted a counteroffer for a larger loan at a higher interest rate.  Plaintiffs contend, on the other hand, that this new offer for the larger loan was made with the old interest rate of 6.5%.

On the loan closing date, August 21, 2002, Plaintiffs allegedly learned for the first time that the new larger loan had an interest rate of 7.5%, not 6.5%.  Despite their complaints, Plaintiffs signed the loan agreement for the higher amount with the higher interest rate.  Plaintiffs allege that up until the closing date on August 21, 2006, and on the closing date itself, employees of Defendant continued to assure Plaintiffs that they would have a 6.5% interest rate.

Almost one year later, in July 2003, Plaintiffs filed a consumer complaint against Defendant with the Michigan Office of Financial and Insurance Services, which did not take any subsequent action.  Plaintiffs then began the current cause of action in this Court on August 22, 2003.  This Court declined to exercise supplemental jurisdiction over Plaintiffs' state claims, leaving only one federal claim remaining, a violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA").

On April 13, 2004, Defendant filed a motion for summary judgment.  After the motion was

2

unopposed by Plaintiffs, this Court granted Defendant's motion "as unopposed" on May 18, 2004. Plaintiffs appealed the decision to the Sixth Circuit, which reversed and remanded.  After remand, Defendant again filed its motion for summary judgment on October 12, 2005.

## II.  Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party.  *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  The Court is not required or permitted, however, to judge the evidence or make findings of fact.  *Id.* at 1435-36.  The moving party has the burden of showing conclusively that no genuine issue of material fact exists.  *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties.  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).  A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *see Celotex*, 477 U.S. at 322-23; *Matsushita*, 475 U.S. at 586-87.

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), aff'd, 929 F.2d 701 (6th Cir. 1991). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

4

### III.  Analysis

The ECOA requires that a lender notify an applicant of the lender's action within 30 days of the application.  *See* 15 U.S.C. § 1691(d)(1) ("within thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application").  A lender can take three types of action in response: (1) an approval; (2) a counteroffer; or (3) an adverse action.  *See* 12 C.F.R. § 202.9.  A counteroffer is an offer to "grant credit in a different amount or on other terms," than the terms originally requested.  12 C.F.R. § 202.2(c)(1)(i).  A recent case from the Third Circuit Court of Appeals stated, "Neither the text of the ECOA itself nor the text of relevant regulations require a notice of a counteroffer to be provided prior to the loan closing." *Ricciardi v. Ameriquest Mortg. Co.*, 164 Fed. Appx. 221, 224 (3d Cir. 2006).

Plaintiffs argue that they applied for a loan on July 19, 2002, and they only received notice of a change in the interest rate from 6.5% to 7.5% on the date of closing on August 21, 2002. Plaintiffs argue, therefore, that this change in the terms of the offer was made 33 days after their application, contrary to the 30-day notice requirement of 15 U.S.C. § 1691.

In response, Defendant argues that it made a counteroffer on August 2, 2002 when Plaintiffs' house was appraised, by subsequently offering Plaintiffs a significantly larger loan than previously offered.  Defendant alleges that it did not offer the larger loan at a rate of 6.5%, but at a rate of 7.5%. Since this Court must take the facts in the light most favorable to Plaintiffs, however, the Court will presume that Defendant or Defendant's agent conveyed the impression of a 6.5% rate to Plaintiffs up until the date of closing, and that Plaintiffs first learned of the changed interest rate on that closing date, August 21, 2002.  Consequently, when Defendant notified Plaintiffs of the changed

5

interest rate on August 21, Defendant was making another counteroffer.

The Court determines that Defendant's counteroffer on August 21 notifying Plaintiff of the changed interest rate was not contrary to the 30-day notice requirement of 15 U.S.C. § 1691. Defendant's August 21 counteroffer was not related to the original July 19 offer, which dealt with a different loan in the amount of $234,000. Instead, Defendant's August 21 counteroffer related back to the loan amount offered by Defendant on August 2, a $249,000 loan. Therefore, on the closing date, August 21, nineteen days after Defendant had made an offer to Plaintiffs for a $249,300 loan, Defendant notified Plaintiffs of the change in the interest rate.

In the *Ricciardi* case, a notice of a counteroffer was presented on the date of closing. In addition, though the counteroffer notice did not contain all the original terms of the loan, it did give a clear notice to the applicant that the final loan terms were different from the original terms. *See Ricciardi*, 164 Fed. Appx. at 224-25. The court in *Ricciardi* found that this counteroffer made on the date of closing was not improper.

This Court will follow the reasoning of the *Ricciardi* court. In the instant case, it was not improper for Defendant to propose a change in the loan's interest rate on the date of closing. Furthermore, the Court finds that the documents presented by Defendant to Plaintiffs at closing sufficiently provided clear notice to Plaintiffs of the change in terms. Although Plaintiffs allege that they were dissatisfied with the terms of the loan, Plaintiffs admit that they knowingly signed the loan agreement for $249,300 at an interest rate of 7.5%, and that they did not exercise their right to rescind the loan during the three days following the closing. Accordingly, this Court finds there is no genuine issue of material fact and that, as a matter of law, Defendant is not liable for a violation

6

of ECOA.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [docket entry 31] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action, Case No. 03-40210, is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated:   September 29, 2006                    s/Paul V. Gadola
                                              HONORABLE PAUL V. GADOLA
                                              UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   October 3, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                              Frank J. LaRocca                              , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                Amy L. Hosey                .


                                   s/Ruth A. Brissaud
                                   Ruth A. Brissaud, Case Manager
                                   (810) 341-7845

---